UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LEONARD ARNEZ HUNTER,

        Petitioner,

v.                                        CASE NO. 06-12298
                                         HONORABLE JOHN CORBETT O'MEARA

BARRY D. DAVIS,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Leonard Arnez Hunter has filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for voluntary manslaughter and assault with intent to do great bodily harm less than murder. Respondent Barry D. Davis urges the Court through counsel to deny the habeas petition. The Court agrees with Respondent that Petitioner's claim lacks merit. Accordingly, the habeas petition will be denied.

**I. Background**

Petitioner was charged in Wayne County, Michigan with second-degree murder and assault with intent to murder. The charges arose from an argument between Petitioner and his girlfriend, Deborah McDonald, on July 6, 2003, in Detroit. The argument escalated into a fight between Petitioner and Deborah's two sons, Marcellais McDonald, who was nineteen years old at the time, and Jeremy McDonald, who was seventeen years old. At trial,

> Deborah testified that [Petitioner] pushed her during a fight in front of her daughter and two sons. Marcellais confronted [Petitioner] who then pushed Marcellais. Jeremy testified [that] Marcellais responded by punching [Petitioner]

in the face and a fight ensued. Jeremy testified [that] he tried to break up the fight and administered a choke hold on [Petitioner] when [Petitioner] had Marcellais backed against the side of the house. Jeremy admitted to choking [Petitioner] for about fifteen seconds before throwing him on the ground. [Petitioner] then got up and ran upstairs.

[Petitioner] testified that when Jeremy and Marcellais appeared during his argument with Deborah, Jeremy threatened to beat him and appeared to reach into his back pocket while Marcellais struck him in the head, twice. [Petitioner] later testified [that] Marcellais had tried to hit him with a tire iron. [Petitioner] claimed [that] the boys began to punch him, butted his head into a door, and Jeremy choked him. Both Jeremy and Deborah denied [Petitioner's] testimony that Deborah was yelling to her sons to "kill him." Jeremy put [Petitioner] in a choke hold. Consequently, [Petitioner] retrieved a carpenter knife from his pants pocket and began jabbing the knife toward the boys. [Petitioner] testified [that] he saw another knife on the ground which he claimed was a kitchen knife that Marcellais had stolen from the family home days before the incident. [Petitioner] testified [that] Jeremy was holding this knife at some point during the fight. Jeremy testified that he never put his hand in his back pocket and that neither he nor Marcellais had weapons.

When the fighting stopped, Marcellais had sustained four stab wounds: two to his chest, one to his back, and one to his right leg. The stab wounds to his chest penetrated his heart and lungs, causing death. The medical examiner testified the stab wounds were consistent with an upward stabbing motion. Jeremy had also been cut on his stomach and arms.

*People v. Hunter*, No. 252595 (Mich. Ct. App. June 30, 2005) (unpublished opinion).

At the conclusion of the bench trial, the trial court found Petitioner guilty of the lesser-included offenses of voluntary manslaughter, Mich. Comp. Laws § 750.321, and assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84. On November 21, 2003, the trial court sentenced Petitioner to imprisonment for five and a half to fifteen years for the manslaughter conviction and to a concurrent term of nineteen months to ten years for the assault conviction.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per*

*curiam* opinion. *See Hunter*, Mich. Ct. App. No. 252595. The state court of appeals concluded that the trial court correctly applied the law and that there was no merit to Petitioner's allegation that the trial court shifted the burden of proving self-defense to him. On December 27, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. Hunter*, 474 Mich. 976; 707 N.W.2d 199 (2005) (table).

Petitioner filed his habeas corpus petition on May 22, 2006. The sole claim reads:

Petitioner's convictions should be reversed where the trial court erroneously applied the law of self-defense by holding that Mr. Hunter initiated the use of deadly force by pushing Ms. McDonald and that he had an obligation, under the facts, to retreat prior to using deadly force, and by failing to recognize that the prosecution had the burden to prove beyond a reasonable doubt that Petitioner was not acting in legitimate self-defense.

Respondent contends in an answer to the habeas petition that the state appellate court's adjudication of this claim did not involve an unreasonable application of clearly established Supreme Court law and, therefore, the habeas petition must be denied.

## II. Standard of Review

Habeas petitioners are entitled to the writ of habeas corpus only if they can show that the state court's adjudication of their claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

### III. Discussion

#### A. The State Law Claim

The defense theory at trial was that Petitioner was not guilty because he acted in self defense. The essence of Petitioner's habeas claim is that the trial court, as the trier of fact,

4

misapplied state law on the issue of self defense. Petitioner claims that the trial court made the following three errors of law: (1) it determined that he initiated the use of deadly force by pushing Deborah McDonald; (2) it concluded that he had an obligation to retreat prior to using deadly force; and (3) it failed to recognize that the prosecution had the burden of proving beyond a reasonable doubt that he was not acting in legitimate self-defense.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (*per curiam*)). Petitioner has no right to habeas relief on the basis of the trial court's alleged misapplication of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

### B. Sufficiency of the Evidence

To the extent that Petitioner is challenging the adequacy of the prosecution's proofs, the Court construes his claim to allege that the evidence was insufficient to support his convictions. The relevant question on sufficiency-of-the-evidence claims "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Petitioner, however, is not claiming that the prosecution failed to establish the elements of voluntary manslaughter or assault with intent to do great bodily harm less than murder. Instead, he claims that the prosecution failed to prove that he did not act in self defense. He maintains that he was not the aggressor and that there was no

5

evidence he initiated the use of deadly force or overreacted to Jeremy McDonald's choke hold.

It is true that, in Michigan, the prosecutor carries the burden of disproving a claim of self-defense. *People v. Watts*, 61 Mich. App. 309, 311; 232 N.W.2d 396, 398 (1975). However, "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required . . . ." *Patterson v. New York*, 432 U.S. 197, 210 (1977). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting); *Martin v. Ohio,* 480 U.S. 228, 233-36 (1987); *White v. Arn,* 788 F.2d 338, 342-47 (6th Cir. 1986). "This is because only *elements* of an offense impose this heavy burden of proof upon the State." *Gilmore*, 508 U.S. at 509 (emphasis in the original); *see Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (1986)).

### 1. Self Defense

Even if the Court were to assume that Petitioner's argument is cognizable on habeas review, the claim has no merit for the following reasons. The test for determining whether a defendant acted in lawful self defense is whether the defendant honestly and reasonably believed that he was in danger of imminent death or serious bodily harm. *People v. Heflin*, 434 Mich. 482, 502; 456 N.W.2d 10, 18 (1990). The amount of force used may be no more than is necessary to protect oneself. *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72, 74 (1983), *abrogated on other grounds by Heflin*, 434 Mich. at 503 n. 16; 456 N.W.2d at 19 n.16.

### 2. The Facts

The evidence adduced at trial established that Petitioner started an argument with Deborah McDonald and suggested that she and her children leave the apartment they shared. Deborah, her daughter Alexis, and her son Jeremy exited the apartment and went outside. Petitioner followed the group outside and continued to argue with Deborah. He then pushed Deborah so hard that she lost her balance and fell back onto a wooden fence. Marcellais came out of the house and objected to the way Petitioner was treating his mother. Petitioner pushed Marcellais, who retaliated by punching Petitioner in the face. A fist fight ensued between Petitioner and Marcellais. Jeremy tried to break up the fight by pulling Petitioner away from Marcellais. He also administered a choke hold on Petitioner, who fell to his knees. Jeremy then threw Petitioner to the ground, and the fight ended. Petitioner got up and walked into the house.

At some point during the affray, Petitioner managed to stab Marcellais four times and Jeremy two times. The questions for the trier of fact were whether Petitioner honestly and reasonably believed that he was in danger of imminent death or serious bodily harm when he stabbed Marcellais and Jeremy and whether he applied more force than was necessary.

Petitioner testified that he was gasping for air, fainting, and fighting for his life when Jeremy held him in a choke hold. He denied pulling out a knife before Jeremy choked him, and he claims in his habeas petition that all the evidence pointed to the conclusion that the stabbing occurred while Jeremy held him in a choke hold.

Jeremy, however, testified that Petitioner's back was to him when he administered the choke hold and that Marcellais was standing to the side of him at the time. The prosecutor's theory was that Petitioner pulled out a knife and stabbed Marcellais during the fist fight and that he stabbed Jeremy when Jeremy intervened. Marcellais was stabbed in his chest, back, and leg,

7

and Jeremy was stabbed in his abdomen and forearm.  A rational trier of fact could have concluded that, if Petitioner did not produce the knife until Jeremy choked him, he would not have been able to inflict the wounds that killed Marcellais and injured Jeremy.

There were other reasons for concluding that the prosecution disproved Petitioner's defense.  His trial testimony was internally inconsistent at times and inconsistent with his statement to the police where he said that he fell to the ground when Jeremy punched him and then pulled a knife out of his pocket and started swinging at Jeremy and Marcellais.  He also told the police that he did not see a knife on either Jeremy or Marcellais during the fight.  At trial, he testified that Marcellais tried to hit him with a tire iron and that Jeremy possessed a knife while the three of them were fighting.  He did not make these allegations until the prosecutor asked him on cross-examination whether the boys possessed any weapons.  Jeremy and Deborah testified that the boys did not have any weapons and that Deborah did not encourage the boys to kill Petitioner.

### 3. Summary

A rational trier of fact could have concluded from the evidence viewed in the light most favorable to the prosecution that the prosecutor disproved Petitioner's defense theory.  The facts, as summarized above, indicate that Petitioner was the aggressor.  He provoked the fist fight by pushing Marcellais.  If the trier of fact chose to believe the prosecution witnesses, Petitioner could not reasonably have believed that he was in danger of immediate death or great bodily harm before the choke hold.  And there was no credible evidence that Petitioner waited until the choke hold was administered to pull out a knife.  In the alternative, the trier of fact could have concluded that Petitioner applied more force than was necessary.

8

Although Petitioner alleges that the trial court improperly concluded that his testimony was not credible, "[i]t is the province of the factfinder to weigh the probative value of the evidence and [to] resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992)). Furthermore, "[a]n assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Id*. (citing *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000)).

## IV. Conclusion

Petitioner's state law claim is not a basis for habeas corpus relief, and to the extent that Petitioner raises a federal constitutional issue, the state court's decision was objectively reasonable. It did not result in an unreasonable determination of the facts. Nor was it contrary to, or an unreasonable application of, *Jackson*. Accordingly, the habeas petition is DENIED.

                                                        s/John Corbett O'Meara
                                                        United States District Judge

Date: February 29, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 29, 2008, by electronic and/or ordinary mail.

                                                        s/William Barkholz
                                                       Case Manager